## McCabe *et al.* v. Knapp, Stout & Co.

1. **Damages: MEASURE OF: EVIDENCE.** In an action to recover damages for loss sustained upon a cargo of ice, caused by the defendants' boat colliding with and sinking a boat of the plaintiff, and destroying its cargo, it appeared that the boat lost was constructed with another; that these were packed with ice, lashed and run together, for the reason that two boats could be thus run for about the same expense as one. *Held,*

    1. That the two boats were to be treated as one; that the measure of damages was the difference in value of both boats with their cargo before and after the injury at the place of the accident, to be ascertained with reference to the nature of the cargo, its condition and all the circumstances upon which such value depended, and that for this purpose, evidence was admissible to show that the expense of running the remaining boat to the point of destination would be nearly as much as it would have been to run them both as they were before the injury.

    2. That evidence was admissible to show that the lost boat was a better boat than the one saved, for the purpose of establishing the probability of the former one being well built and seaworthy.

    3. That as affecting the question of damages, it was proper to show that the boat had no value for any other purpose than the shipment of ice.

2. —— **ASCERTAINMENT OF LOSS.** An instruction in such case, which directed the jury, that in the ascertainment of the loss sustained, they would look at the value of the property for the purposes it was adapted to and designed for, and the actual damage sustained by its loss for such purposes, was held to be correct.

3. **New trial: CONFLICTING EVIDENCE.** A verdict will not be disturbed where the evidence is conflicting and nicely balanced upon questions of fact peculiarly within the province of the jury to decide.

*Appeal from Dubuque District Court.*

Monday, December 9.

Plaintiffs in their petition claim $3000, and make this case. They were on the 30th of April, 1866, the owners of two flat boats of the value of $1200 each, built for the

purpose of transporting ice from lake Pepin to a market on the lower Mississippi, and not valuable for any other purpose. They were freighted with ice, the property of petitioner, 230 tons in each, lashed together and run with a single crew; on the day named said boats had reached a point fifteen miles above Dubuque; were tied up, and while thus situated, the defendants by their servants, employees, etc., were running a raft down said river, and through their negligence allowed the same to collide with and run into one of said boats, whereby the same was damaged and caused to sink, and the cargo entirely destroyed, to the plaintiffs' damage as aforesaid, wherefore, etc.

The answer is in denial, and also sets up that the loss resulted from the fraud and unseaworthy condition of the boat, and the mismanagement and want of skill of plaintiffs and their agents and servants.

Trial to a jury at the February Term, 1867; verdict and judgment for the plaintiffs in the sum of $1900, and defendants appeal.

*Shiras, Ballou & Van Duzee* for the appellants.

It is the actual damage sustained by the party at the time and place of the accident that is the measure of damages. *Smith* v. *Cowdry*, 1 How. 28; Sedgwick on Damages, 71; *Davis* v. *Fish*, 1 Greene, 407.

If you charge any body with a loss arising from mistake, you should show that no due diligence could have been used by you which might have prevented the loss. *Horden* v. *Dalton*, 1 Carr & Payne, 181.

In an action for an injury occasioned by the negligence of another it is a good defense to show that the injury so far arose from the negligence of the plaintiff himself, that he might by ordinary care and caution have avoided the injury. 2 Starkie on Evidence, 741.

The defendants' liability is limited to the direct damages which, according to the nature of the subject, may be contemplated or presumed to result from his failure. Remote or speculative damages, *although susceptible of proof and deducible from the non-performance*, are not allowed, and if the injured party has it in his power to take measures by which his loss may be less aggravated, this will be expected of him. *Miller* v. *Mariners' Church*, 7 Greenl. 51.

The probable or possible profits of a voyage as yet in *fieri* can never afford a safe rule by which to estimate damages in cases of a marine trespass. There is so much uncertainty in the rule itself, so many contingencies which may vary or extinguish its application, and so many difficulties in sustaining its legal correctness, that the court cannot believe it proper to entertain it.  *  *  *  This rule may not secure a complete indemnity for all possible injuries, but it has certainty and general applicability to recommend it, and in almost all cases will give a fair and just recompense. 3 Wheaton, 560.

*Adams & Robinson* for the appellees.

WRIGHT, J. — The errors assigned relate to the admission of testimony, the rule of damages as given to the jury, and the sufficiency of the evidence to warrant the verdict. And of these we shall speak in their order.

1. DAMAGES: measure of: evidence.

1. To several witnesses, the plaintiff propounded this question: "How does the expense of running two such boats thus freighted and fastened together, compare with running one boat?" The answers were, "Probably a difference of one or two men," "Very little difference," and the like. This was objected to, because it was, in fact, estimating profits, it being insisted that the collision

did not require plaintiff to incur any further expenses, but only lessened the amount of ice.

In view of the time of the collision and the nature of the cargo, we think the boats must be treated as a unit. They had been constructed, packed with ice and started together, for the reason that two boats could be run with almost the same expense as one; and if the other boat and freight were impaired in value at the place of the collision, by the loss of one, because, for instance, the entire expense of the voyage would have to be charged to it, then, why was it not proper to make the inquiry suggested in the question propounded to those witnesses? The real damage was the difference between the value of the two boats and cargoes before and after the accident. And this is arrived at, not by estimating value at the destined market, but at the place of injury, taking into consideration the value of the cargo and its condition, and all the circumstances upon which the value depended. Thus, suppose five-sixths of the cargo of both boats had been lost; if no market could be found for the remaining sixth at that place, and this would be probable at this season of the year, it would be comparatively valueless, for the expense of its transportation would be almost, if not quite, as great as to take one boat, and would probably exceed its value at its destined market. And, as these two boats were run together, sustaining the same relation to each other as the several parts in each, sustained to all that was therein, constituting unitedly the freight, the property of plaintiffs, it was proper to consider the injury to all or each, by the loss of one.

To assist in this estimate, it would seem quite legitimate to ascertain the relative expense of running one or two boats. Just as though corn, for instance, had been shipped, having a value at Chicago, its destination, but not at Dubuque, and if it would cost relatively more to

ship one hundred than one thousand bushels, this fact would be proper in arriving at the owner's damage, when nine hundred bushels had been destroyed by defendants' negligence. And this upon the principle that each bushel had a relative value — that lost, because of the greater quantity — that remaining, because of the same connection. So even more clearly would it be with this commodity, which could only be secured at a certain season — could only be shipped at a certain time, and taken to market in a particular manner.

It is further objected that a witness was allowed to compare the lost boat with the one saved, and also to state whether it had a value for any other purpose. The objections made in the court below were, that these inquiries were " irrelevant and improper ;" but upon what ground we cannot conceive. The first was proper, because evidence had been given tending to show that the boat saved was frail and unseaworthy, and certainly nothing could be more proper than to prove by a witness, cognizant of the fact, that the one lost was best, and therefore probably, if not in fact, well built and seaworthy. The second was so manifestly proper as to scarcely need attention. If it had no value for any other purpose, and its cargo was destroyed without opportunity to supply it, this fact might be shown ; and this is more especially true, as the charge of the court pointed out very clearly the duty of plaintiff after the loss, and especially in relation to supplying the lost cargo.

We next come to the instructions. Appellants say that it is the actual loss at the time and place of the accident that is the measure of damages. This was in effect given by the court below, the jury being instructed in the same connection, that they would look at the value of the property " for the purpose it was adapted to and designed for, and the actual damages sus-

2. —— ascertainment of loss.

tained from such injury by its loss for such purpose." And this was proper enough. This was but saying that they could consider the nature of the cargo, its use and destination. The expense of building such a boat might be say $1,200. It is made for and adapted to shipping ice, perhaps, but nothing else.

Its cargo lost, it ceases to have any great value, unless the cargo can be supplied, and of this there is no pretense. Fifty or one hundred dollars might repair the injury and make the boat as good as before, but it would not restore its value; for this could not at that time and place be disconnected from the freight. The expense of building the boat would be a proper element in estimating its value, though not the sole criterion. And as there was no evidence that it was worth less than its cost, nor that the ice was worth less than the expense of packing it, this much at least plaintiffs were entitled to recover. If the property was worth more than this, then they should have recovered this added value. And while the instructions objected to are not in all respects clear and unambiguous, we do not believe they laid down any other rule than we have thus briefly stated. Especially is this true when they are taken in connection with the other portions of the charge, which are for the most part very plain and direct and all that appellants could reasonably ask.

Some instructions were asked and refused. But as they were completely and entirely covered by what the court had already said, they were properly refused.

3. Did the evidence warrant the verdict? The jury found for plaintiff, and a motion for a new trial was **3. New trial: conflicting evidence.** overruled. If the loss occurred from the negligence of defendants' employees, without fault on plaintiffs' part, then, it is conceded, the plaintiffs could recover. If not, then the verdict should have been for defendants. Upon this subject — as also the amount

of the loss — there was much testimony, the witnesses on either side giving their several versions of the transaction. It is the usual case of conflict, upon a question peculiarly within the province of the jury to determine, with no preponderance — certainly none in appellants' favor — and we cannot interfere.

Affirmed.